Mr. Moynihan Morning, Your Honors. We're here because the District Court erred in granting summary judgment against my client on a Title VII claim. Under the straightforward analysis this Court requires for summary judgment of whether a reasonable jury could infer prohibited discrimination from the evidence, Mr. Smith presented contested facts that precluded summary judgment. While the Court in these cases typically discusses a mosaic of facts that would create a picture sufficient to support an inference of discrimination, there are several facts here independently on their own that would support the denial of motion for summary judgment. Here the evidence demonstrated clearly that CTA had a policy that every sexual harassment investigate every sexual harassment claim had to be investigated by its EEO unit. While they denied that at the trial court and the District Court indicated that there was no evidence to support such a policy, Mr. Ramirez, the lead investigator, testified at length about that policy, that the EEO was the exclusive body and that they had to reach a conclusion on sexual harassment complaints. Is there any indication that there was a racial or ethnic twist in the way that that policy was not honored? Yes, Your Honor. The evidence again that the District Court ignored was that there were eight complaints made against non-African American employees that were specifically not. And four against not against African American employees, right? Yes, Your Honor. That also were not, I mean, why is this anything other than just sort of random bureaucratic friction? Because when you have a race neutral policy and you apply it in a manner that is not race neutral, you do have, that is discrimination. I understand that. Okay. I don't see how 12, is it 12 or 8? I'm sorry, Your Honor? 12 or 8 instances of complaints that were not investigated by the EEO unit. I believe it was 12, Your Honor. Okay. Four African Americans, two Hispanic employees. And the remainder were white, Your Honor. Okay. So how do we conclude that this was not applied or failed to be applied in a race neutral way? Well, Your Honor, when you, when you have a, an event of discrimination under the Connecticut v. Teal and under the Diaz case, you can't look at the fact that there were certain African Americans against whom the policy was... No, the question is whether there is some indication. Look, you've got some evidence of failures to comply with this policy, confusion about the identity of the decision maker. You've got evidence of a really terrible investigation having been done of your client. Where I have trouble is linking any of this to his race. Your Honor, in the specific instance, Sal Ramirez was the investigator who conducted the investigation of Mr. Smith. He's the one who determined to apply the policy to Mr. Smith. There were two Hispanic Americans who he was assigned to conduct an investigation under that investigation policy that he specifically said, I'm not going to, I'm going to take the operation unit's conclusion that they didn't engage in sexual harassment. And, and we're supposed to just look at those three cases? Your Honor, those are the three cases that I have. I believe Mr. Ramirez was involved in one other. Um, but as to the two, the only two Hispanic employees who there were sexual harassment complaints made against, they did not have that, the policy applied to them. And that was a decision by Mr. Ramirez, the same person who made the decision to apply the policy against Mr. Smith. Please keep in mind that you've also got Beavers and Mooney involved, right? Not in the decision to conduct the investigation, Your Honor. And in fact, Beavers signed off on who gets investigated and who doesn't, right? No, Your Honor, she does not. The claim comes in from the operations department or from an employee. And as the defendant here admitted, in that application, the EEO does not have a choice. They have to conduct an investigation of every sexual harassment complaint. It's not a decision by Ms. Beavers, it's not a decision by Mr. Ramirez, it's not supposed to be. And yet they did. As to Mr. Mooney, if I could please address that. Mr. Mooney did not conduct an investigation to determine whether or not Robert Smith engaged in sexual harassment. He went to the extraordinary step because he knew Mr. Smith and he knew this was not consistent with his character. There were no complaints against Mr. Smith. Mr. Mooney, who was the person who had conducted an operations investigation of a sexual harassment complaint, had he had the jurisdiction, he instead conducts an investigation to try to find facts that he can reject the EEO's finding. Because given the EEO's finding, he had no choice. He testified, I have no choice, I have to dismiss Mr. Smith because of the EEO's finding. His investigation was hamstrung because the EEO unit says, no, you can't have the report. You can look at it, but you can't have it in the evidence to actually see what we did. You want to interview the person who did the investigation? Nope, can't do that either. When Mr. Mooney went to the extraordinary step of going to the CTA's counsel to say, hey, this investigation, is it right? Counsel says, I'll go back and Mr. Mooney asked specifically, was every witness interviewed? How is any of this evidence of race discrimination? Your Honor, this is going to, the evidence of race is from... I mean, it may have been a bad investigation, but... The evidence, it's, you have a pretext here. I mean, one, you have Mr. Ramirez is the one who's making the decision. He is acting specifically to protect Hispanics employees by not conducting an investigation by the EEO unit. He conducted... As well as several white employees. And under Connecticut v. Teal and under this court's Diaz opinion, the fact that other African Americans are treated consistently with non-African Americans does not eliminate the discrimination against Mr. Smith. Now, the question is how one concludes that the discrepancies were the result of racial bias. Again, I don't mean this investigation. There is no question that the investigation, Mr. Ramirez failed to follow the protocol established by the CTA. Doing that enabled him to prevent a Hispanic employee, Mr. Levera, from being terminated. Mr. Levera was a supervisor who signed off on Ms. McCall's fraudulent timesheets. He signed off on that without the supervisor's required signature. Had that been investigated, had the operations department been free to Mr. Levera, a Hispanic employee, from being terminated, given Mr. Ramirez's treatment... So the assumption is that anybody who does anything for somebody of the same race or ethnic group is doing so on the basis of race or the ethnic group? Yes, Your Honor. Given the fact that Mr. Smith... That's an incredibly racist thought. Your Honor, all I can do is looking at the evidence that we have and what Mr. Ramirez did. And he specifically... There is a race-neutral policy that Mr. Ramirez did not apply to certain employees, and he applied it to Mr. Smith. And by applying it to Mr. Smith and then doing an investigation that nobody can say was consistent with the policies of the CTA, led to a conclusion that isn't supported. This Court's decision, I think it's in the Hobgood case, says specifically, where you have somebody deviating from their policies and procedures in an investigation, that alone is circumstantial evidence that warrants the reversal of summary judgment. Did not say that alone. Selective deviation. And that... In Hobgood, there was plenty of evidence of unlawful motive, in addition to a failure to comply with normal procedures. A failure to comply is part of a mosaic. But you still have to be able to reach a reasonable conclusion of unlawful animus. And that's the evidence that they fail to follow a policy that they're supposed to interview... They're supposed to investigate every sexual harassment claim with a protocol that they're supposed to follow of weighing the credibility of the witnesses. That they... In this case, Mr. Ramirez created facts. He created facts to support a conclusion that Mr. Smith was not credible. The first fact he gives, Mr. Smith denied being in the truck. That's a critical fact for his conclusion. When I examined him, he acknowledged there is no evidence in the record, no evidence in the investigation to support Mr. Ramirez's assertion of a fact that Mr. Smith denied being in the truck. In fact, the person who interviewed Mr. Smith, Alenda Young, she testified unequivocally, yes, he always admitted being in the truck. As to Mr. Levera, he was a critical witness in support of Ms. McCall's allegation. They specifically concealed that he was in a relationship with Ms. McCall. I mean, they admit doing that. He, Mr. Levera, testified that, oh, there was another witness who claims Mr. Smith made the same exact proposition to. And yet Ms. Young, in her testimony, says when she confronted the witness with it, the purported person who perceived the same proposition, she said, no, none of that happened. Mr. Smith never did any of that. So you have significant indicia here. This isn't a, I'm trying to say the investigation was, wow, it should have been done better. They had procedures in place. They had to weigh the credibility. If the accused's story changed, if the accused's story was inconsistent with third parties, if the accused had a motive to make it up. Thank you, counsel. Thank you, sir. Ms. Kaplan. May it please the court. My name is Rachel Kaplan and I represent the CTA. The CTA respectfully requests that this court affirm Judge Coleman's decision awarding the summary judgment. I'd like to focus on three issues in my argument. First, Smith failed to show any racial animus. Second, he failed to meet the similarly situated standard. And three, he failed to show pretext. And as the judges have commented, this is truly a race discrimination case without any evidence of racial discrimination. Beginning with the racial animus requirement, the only person that Smith identifies as having any racial animus is Ramirez. But Ramirez was not a final decision maker. He was not a final decision maker as related to the EEO's conclusions. And he was not a decision maker at all as related to Smith's discipline. Mooney and Beavers were the decision makers. And Smith does not allege that either of them had any racial animus. Mooney denies that he had any discretion, right? No, Mooney said that he could either terminate or demote or suspend Smith in this case. And not only did he look at the EEO's investigation in making a decision, he also did his own investigation. So in fact he did have discretion to make a decision as to whether or not Smith would be terminated or something short of termination. Getting back to Ramirez's alleged racial animus, there are only two examples that Smith identifies as evidence of this. One is that Ramirez did not subject Hispanic employees, two Hispanic employees, to an EEO investigation. However, Smith does not show that Ramirez had the discretion to make that decision. He was an investigator in the EEO department. He was one of three investigators. He was not the manager of the EEO. That was Pam Beavers and she was African American. Smith also asserts that Ramirez reached an EEO investigation result against Smith so that Ramirez could protect Lavera, another Hispanic employee. But as a district court held, that theory was completely speculative and unsupported by the evidence. Smith then alleges that the EEO investigation was improper and that protocol and procedures weren't followed so that race discrimination should be inferred. But none of the facts that he identifies suggest that there was, again, any race discrimination. As to the similarly situated prong, Smith is unable to prove this. He has to show that an individual in a non-protected class was treated better. In other words, that individual has to have engaged in the same conduct with the same supervisor and subject to the same standards. Smith only asserts that Schaefer was similarly situated to him, but he provides absolutely no details as to any of those requirements and he doesn't meet his burden of proof on that issue. In another attempt to prove similarly situated, Smith asserts that non-African Americans accused of sexual harassment were investigated by their departments while African Americans accused of sexual harassment were investigated by the EEO. However, once again, that is not borne out by the data. Of the eight individuals accused of sexual harassment who were investigated by their departments, four out of eight were African American. It's only eight, not 12? Yes. I believe that Smith points to some additional individuals in Exhibit E, which the court did not consider because Judge Coleman did not find that analogous here. So it's only eight as a comparator and that's in Exhibit D. But as the district court noted, none of the eight people were similarly situated to Smith. None was a manager and none was disciplined by Mooney. Finally, Smith argues that the CTA's reasons for discharging him would be textual, but it's undisputed that Smith was the decision maker in discharging Smith. He only made that decision after conducting his own investigation into the sexual harassment allegations and he believed McCall's version of events over Smith's. Was Mr. McCall, I'm sorry, was Mr. Smith a supervisor of Ms. McCall? He was two levels up from Ms. McCall, yes. Did he directly supervise her? Or was she in his chain of command? On the day in question, Mr. McCall was kind of the intermediate supervisor, but he was her supervisor, yes. And on the chain of command question, Ramirez does his investigation and then forwards his findings to Beavers, who's his supervisor? Yes, exactly. And then she does some more investigation and then sends it on up to Mooney? She determined whether or not the sexual harassment policy was violated, and in this case she determined that it was. After that occurred, then Mooney considered that evaluation as well as doing his own investigation, which reached the same result. And there's simply no evidence that there was pretext here or that Mooney did not believe, that Mooney did not honestly believe that Smith violated the sexual harassment policy as the basis for his discharge. For those reasons, and for the reasons stated in our brief, the CTA respectfully requests that the district court's decision be affirmed. Thank you very much. Thanks to both counsel. The case is taken under advisement and the court will be in recess. Thank you.